UNION LAND & STOCK CO. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. May 5, 1919.)

No. 3154.

1. WATERS AND WATER COURSES ⬅️33—SUIT TO DECLARE FORFEITURE—PUBLIC INTEREST.

The District Court of the United States will entertain a suit by the United States to declare a right of way and easement for the storage of water, applied for under Act March 3, 1891, forfeited for failure to construct or complete the reservoir described in the application.

2. WATERS AND WATER COURSES ⬅️33—LAND GRANT FOR RESERVOIR—AUTHORITY OF ATTORNEY GENERAL.

The Attorney General had authority to bring suit in the name of the United States to declare forfeiture of a right of way and easement for the storage of water, applied for pursuant to Act March 3, 1891; the applicant having failed to construct the reservoir, as shown by his application as approved by the Secretary of the Interior.

3. WATERS AND WATER COURSES ⬅️27—GRANT FOR WATER STORAGE—STATUTES.

Act March 3, 1891, § 18 (Comp. St. § 4934), as to rights of way granted to ditch companies for the storage of water, does not confer a right independently of section 19 (section 4935), providing how any canal or ditch company may secure the benefits of the act, as the two sections are to be construed together.

4. WATERS AND WATER COURSES ⬅️33—FORFEITURE OF RIGHT OF WAY AND EASEMENT FOR WATER STORAGE—BURDEN OF PROOF.

In suit by the United States to declare forfeited a right of way and easement for the storage of water, applied for pursuant to Act March 3, 1891, for failure to construct the reservoir as shown by the application as approved by the Secretary of the Interior, to declare the forfeiture, it was not necessary to prove that a dam higher than the one constructed

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

by defendant applicant could have been practically used, or that there was sufficient water to have filled a larger reservoir; the contrary being for applicant to show, if true.

Appeal from the District Court of the United States for the Second Division of the Northern District of California; William C. Van Fleet, Judge.

Suit by the United States against the Union Land & Stock Company, a corporation. From a decree for the United States, defendant appeals. Affirmed.

The appellee brought a suit in equity to declare forfeited a right of way and easement for the storage of water. It was alleged in the bill that on February 23, 1895, the appellant, under the provisions of an act of Congress of March 3, 1891 (26 Stat. 1101, c. 561), filed in the Land Office at Susanville, Cal., its application for an easement for a reservoir for irrigation purposes, describing the same, in the map which was attached to the application, as reservoir No. 1, or Lake Luckett, and which covered and affected certain described portions of the public lands of the United States, of which the appellee then and for a long time prior thereto had been the owner in fee simple. The bill alleged that on November 18, 1895, the application was duly approved by the Secretary of the Interior; that no part of said reservoir or section thereof has been constructed or completed by the appellant since the approval of said right of way by the Secretary of the Interior. The prayer of the bill was that the easement be declared forfeited and canceled, and that the appellant and all claiming under it be forever estopped from asserting any right, title, or interest in or to said lands, and that all title, rights, etc., to the property described in the application be reinvested in the appellee, and that the grant be declared null and void.

The appellant moved to dismiss the bill for want of equity. The motion was overruled, and the appellant answered, denying that the appellee was the owner of the lands covered by the easement, and alleging that the appellant was the owner thereof, and denying that the reservoir had not been constructed or completed, and alleging the construction and use of the reservoir for the storage of water and irrigation. It was stipulated in open court that in the years 1894 and 1895 the appellant went on the ground at the point A, indicated on the map attached to the bill of complaint, and after November, 1895, constructed a dam which at that time was 35 feet high; that said dam remained at that height until the winter of 1897–98, when a portion of it was washed away; that in the fall of 1898 the dam was reconstructed to a height of 26 feet, but settled down to a height, at its lowest, of 23 feet, at which point it now remains; that said dam has 300 feet of 30-inch steel pipe through the bottom, with a patent gate in shape to store and withdraw water. The stipulation further recites:

"It was also shown by competent evidence that the dam as constructed would not store water over more than 100 acres of the land in said reservoir, and that it did not have a capacity of more than 600 acre feet of water; that the dam was in a bad state of repair, but that it was strong enough to store water in the reservoir to a depth of 20 feet; that the base was not of sufficient width to build the dam to a height of 50 feet; that the said reservoir is one of a series of reservoirs, the others being known as dams Nos. 2 and 3, and that they are all used in connection with each other; that reservoir No. 1, being the one in suit, has been mainly used for the irrigation of what is known as the 'Moulton Ranch,' under a verbal agreement with the owners of said ranch; that the defendant company had been properly notified, and cited to relinquish said reservoir site or show cause why judicial proceedings should not be instituted to cancel the grant, for the reason that the dam had not been built in accordance with the application, as shown on Exhibit A, attached to the complaint; that the defendant had had 20 years in which to complete said dam in accordance with said plans; that said reservoir has been used to store water each year since its construction, with the exception of dry years, when there was no water to store."

R. L. Shinn and A. L. Hart, both of Sacramento, Cal., for appellant.

Annette Abbott Adams, U. S. Atty., and Frank M. Silva, Asst. U. S. Atty., both of San Francisco. Cal. (H. P. Dechant, of San Francisco, Cal., of counsel), for the United States.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] The appellant contends that the bill should have been dismissed for want of equity, for the reason that it is brought to declare a forfeiture, and cites Horsburg v. Baker, 1 Pet. 232, 236, 7 L. Ed. 125, and Marshall v. Vicksburg, 15 Wall. 146, 149, 21 L. Ed. 121. In the latter case it was said:

"Equity never, under any circumstances, lends its aid to enforce a forfeiture or penalty, or anything in the nature of either."

But the rule thus stated has not always been adhered to in the absolute form in which it is expressed. Thus in Henderson v. Carbondale Coal & Coke Co., 140 U. S. 25, 11 Sup. Ct. 691, 35 L. Ed. 332, Mr. Justice Brewer said:

"Forfeitures are never favored. Equity always leans against them, and only decrees in their favor when there is full, clear, and strict proof of a legal right thereto."

The reason for the rule is that forfeitures are regarded as harsh and oppressive, and the rule has been held not to apply to cases in which forfeiture is imposed by statute and where public interests are to be subserved thereby. In Farnsworth v. Minn. & Pac. R. R. Co., 92 U. S. 49, 68 (23 L. Ed. 530), it was said:

"But there can be no leaning of the court against a forfeiture which is intended to secure the construction of a work, in which the public is interested, where compensation cannot be made for the default of the party, nor where the forfeiture is imposed by positive law."

It is to be added that the Supreme Court has entertained jurisdiction of suits in equity to forfeit land grants in numerous cases, among which may be mentioned United States v. California, etc., Land Co., 148 U. S. 31, 13 Sup. Ct. 458, 37 L. Ed. 354; United States v. Oregon, etc., Railroad, 164 U. S. 526, 17 Sup. Ct. 165, 41 L. Ed. 541; United States v. Tennessee & Coosa Railroad, 176 U. S. 242, 20 Sup. Ct. 370, 44 L. Ed. 452; Oregon & Cal. R. R. v. United States, 238 U. S. 393, 35 Sup. Ct. 908, 59 L. Ed. 1360. It is true that in those cases forfeiture was not the only relief sought. One of them was a suit to quiet title. In others, the aid of equity was sought to declare forfeiture, and to cancel patents or certificates or to obtain injunctive relief. The present case is in its essential features a suit to quiet title. The relief sought, in addition to forfeiture, is that the appellant be estopped from asserting any right, title, or interest in the lands, and that all title rights therein be reinvested in the appellee. We think the motion to dismiss was properly denied.

[2] It is contended that there is no authority for the prosecution of the suit, and United States v. Washington Improvement & D. Co. (C.

C.) 189 Fed. 674, is cited. In that case, in construing a congressional grant for a railway, telegraph, and telephone line through the Colville Indian reservation, with a proviso that the rights therein granted should be forfeited by the grantee unless 25 miles of the railroad should be constructed within two years after the passage of the act, and a further reservation to Congress of power to alter, amend, or repeal the act in whole or in part, Judge Rudkin held that a court of equity had no inherent power to decree a forfeiture of the land grant and that the United States could not maintain a suit to recover the land for breach of a condition subsequent, unless Congress had declared a forfeiture or had given express authority for the institution of the suit.

There are some grounds of distinction between that case and this. That was a case of a special grant to a specific grantee, with a reservation of power in Congress to alter, amend, or repeal the same. Here the grant of rights is a general one. It opens the lands of the United States to the occupation of various and numerous applicants. By a general and permanent statute it provides the steps which they must take to acquire the rights contemplated by the grant. The forfeiture clause is as follows:

"Provided that if any section of said canal or ditch shall not be completed within five years after the location of said section the rights herein granted shall be forfeited as to any uncompleted section of said canal, ditch or reservoir, to the extent that the same is not completed at the date of the forfeiture."

It is not to be supposed, we think, that Congress intended that the United States should have no remedy for the failure of an applicant to complete his canal, ditch, or reservoir within the time limited, unless Congress intervened and by a special act either declared the right forfeited or gave express authority to institute a suit to recover the land.

In United States v. Whitney (C. C.) 176 Fed. 593, Judge Dietrich, in construing the law which is involved here, held that a failure to comply with the requirements of the statute of itself operated to divest the grantee of title and revest it in the government, and that a declaration of forfeiture might be either by act of Congress or by an appropriate judicial proceeding. With that view we agree, and although, aside from the two cases cited, we find no decision directly involving the question here presented, we think the decisions of the Supreme Court, as reviewed in Spokane, etc., Ry. v. Wash. & Gt. Nor. Ry., 219 U. S. 166, 174, 31 Sup. Ct. 182, 184 (55 L. Ed. 159), which establish the doctrine that, where the conditions of the grant are subsequent, "the title cannot be forfeited, except upon proper proceedings by the government, judicial in their character, or an act of Congress competent for that purpose," are sufficient in their scope to justify the suit here brought at the instance of the Attorney General, which is a proper proceeding by the government, judicial in its character, and appropriate for the purpose of declaring a forfeiture.

[3, 4] The appellant contends that there was no authority in law or equity to hold its rights for cancellation, and in view of the language of section 20 of the act contends that the court was limited in its

judgment to declaring a forfeiture of that portion of the reservoir which had not been utilized, and refers to the fact, recited in the stipulation, that the reservoir mentioned in the bill is one of a series of three, which are all used in connection with each other. It would seem that the appellant's position is that the decree forfeits the ground occupied by all three reservoirs. There is nothing in the record to show this. The bill alleged that the appellant's application called for a reservoir site covering approximately 469 acres, with a dam at the outlet 50 feet in height, with a base width of 270 feet, a length on top of 230 feet, and a length at the bottom of 80 feet, calculated to store, when completed, water over the entire acreage of the reservoir. The record does not indicate upon what land the other two reservoirs are located. The decree makes no reference to them. If they are located upon the 469-acre tract, they have been constructed and maintained without authority of law, so far as the record advises us.

We do not agree with counsel for the appellant that section 18 of the Act (Comp. St. § 4934) confers a right independently of the provisions of section 19 (section 4935). Those two sections are obviously to be construed together. Nor do we find merit in the contention that to declare forfeiture it was necessary for the appellee to prove that a dam higher than 23 feet could have been practically used, or that there was sufficient water to have filled a larger reservoir. If the contrary were true, it was for the appellant to show it. It made no effort to amend its application, so as to justify the construction and maintenance of a dam of 23 feet, and when it was notified and cited to relinquish the reservoir site, or to show cause why judicial proceedings should not be instituted to cancel the grant for the failure to build the same in accordance with the application, it made no showing of cause, and no effort to amend its application.

The decree is affirmed.